UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES GANSZ,

           Petitioner,               Case Number: 01-10387-BC
                                              Honorable David M. Lawson

v.

KURT JONES,

           Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

      The petitioner, James Gansz, presently confined at the Lakeland Correctional Facility in Coldwater, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He is represented by counsel. The petitioner was convicted of kidnapping, Mich. Comp. Laws § 750.349, and two counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b. He was sentenced to serve three concurrent prison terms of fifteen to forty years each. The petitioner contends that his convictions are unconstitutional because the state prosecutor failed to disclose to the petitioner a copy of his own statement before trial, the evidence was insufficient, and his state trial counsel was ineffective. He contends, therefore, that he is in custody in violation of the Constitution. The respondent argues that the petitioner's claim is without merit. The Court agrees and will deny the petition for lack of merit in the grounds presented.

I.

      The petitioner's convictions arise out of events that occurred during a three-day period in March 1998 when the petitioner assaulted his girlfriend, Donna Mannix, and held her against her will in her home in Capac, Michigan. The petitioner was tried by a jury in October 1998.

At trial, Donna Mannix testified that the petitioner physically and sexually assaulted her and kept her from leaving her house for three days. She testified that she was afraid to leave even when the petitioner left the house during this period because she feared the petitioner would be back at any moment. She was also afraid to call the police because she feared the petitioner would return before the police arrived. Ms. Mannix testified that the petitioner put his hand inside her rectum without her consent and forced her to have vaginal intercourse against her will. He also threw her down on the bed and banged her head against the headboard, cutting her head. Ms. Mannix testified that she suffered numerous bruises and a black eye resulting from the petitioner hitting her and pushing her. At one point, when the petitioner was sleeping, Ms. Mannix called her ex-husband and asked him to call the police. During the late evening hours of March 12, 1998, Ms. Mannix testified that she saw a flashlight shining into the house. She knew it was the police and attempted to bang on the bedroom window to get their attention. The petitioner held her back, and ordered her not to try to yell for help.

Donna Mannix's ex-husband corroborated her testimony, explaining that Ms. Mannix telephoned him on March 10, 1998 and told him that she was being held against her will, that she had been raped, beaten, and was afraid for her life. Mr. Mannix telephoned the Capac Police Department and left a message stating that his ex-wife needed assistance. Capac Police Chief Paul Libke testified that he called Ms. Mannix's home on March 10, 1998 in response to Mr. Mannix's telephone message, and he left a message stating that if anyone needed assistance they should telephone 911.

The ordeal ended at approximately 11:00 p.m. on March 12, 1998 when St. Clair County Deputy Thomas Buckley went to Ms. Mannix's house to assist the Capac Police Department. As

he approached the rear of the house, he heard a woman scream and saw a man and woman fighting. Deputy Buckley testified that when he entered the house with another officer, he heard Ms. Mannix screaming "help me."

The petitioner testified in his own defense. He denied holding Ms. Mannix against her will. He admitted that he became rough with her at times and admitted to causing the bruises shown in prosecution photographs. The petitioner denied putting his hand in her rectum. He admitted to having vaginal intercourse with her, but testified that it was consensual. The petitioner testified that when the police came to the house, he tried to keep Ms. Mannix away from the windows because he did not want them to see the bruises on her face.

At the close of his jury trial in St. Clair County, Michigan, Circuit Court, the petitioner was convicted of kidnapping and two counts of first-degree criminal sexual conduct. On November 23, 1998, the petitioner was sentenced to three concurrent prison terms of fifteen to forty years.

After his conviction and sentencing, the petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

> I.    Defendant's state and federal constitutional rights to due process were denied where the prosecutor failed to disclose Defendant's 4 page statement until after he had testified before the jury.
>
> II.   Defendant's state and federal constitutional rights to due process were violated where insufficient evidence was presented to support the verdicts.
>
> III.  Defendant was denied his state and federal rights to effective assistance of counsel where his attorney failed to adequately investigate in preparation for new trial.

The Michigan Court of Appeals affirmed the petitioner's convictions. *People v. Gansz*, No. 216174 (Mich. Ct. App. Dec. 12, 2000). The petitioner then filed a delayed application for leave to appeal in the Michigan Supreme Court, presenting essentially the same claims presented to the Michigan

-3-

Court of Appeals.  The Michigan Supreme Court denied leave to appeal.  *People v. Gansz*, No. 118549 (Mich. July 30, 2001).

The petitioner filed his petition for a writ of habeas corpus in this Court on December 20, 2001, presenting the same claims he raised in state court.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), govern this case because the petitioner filed this habeas petition after the AEDPA's effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). That Act "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

> As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases: An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law.  *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).  Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable."  *Wiggins*, 539 U.S. at 520-21

-4-

(quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000); internal quotes omitted).  Additionally, this

Court must presume the correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1)

("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody

pursuant to the judgment of a State court, a determination of a factual issue made by a State court

shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating

that "[t]he court gives complete deference to state court findings of historical fact unless they are

clearly erroneous").

   The Supreme Court has explained the proper application of the "contrary to" clause as

follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly
> established precedent if the state court applies a rule that contradicts the governing
> law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established
> precedent if the state court confronts a set of facts that are materially
> indistinguishable from a decision of this Court and nevertheless arrives at a result
> different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

   The Supreme Court has held that a federal court should analyze a claim for habeas corpus

relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision

unreasonably applies the law of this Court to the facts of a prisoner's case."  *Id.* at 409.  The Court

defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask
> whether the state court's application of clearly established federal law was
> objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect*
> application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application"
> clause, then, a federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.

*Id.* at 409, 410-11.  *See also King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

The petitioner claims that he is entitled to a writ of habeas corpus because the prosecutor did not disclose to the defense the petitioner's four-page police statement until after the petitioner testified on direct examination.  During the State's cross-examination of the petitioner, the prosecution began to question the petitioner about statements he made to Officer Steven Steele.  The defense objected on the ground that the prosecutor had failed to produce the written statement that the petitioner had made to police.  The prosecutor informed the court that she had not been aware of the written statement until the direct examination of the petitioner, explaining,

> I received it during the course of the direct examination.  I am sure Chief Guilliat or I'm sorry, Chief Libkie, if called upon, would testify in that regard.  He had it in his report.  I did not have it in my original report.  I learned of it when I asked him what kinds of things did the Defendant say to you guys, and I was presented with this statement.

Trial Tr. at 607.  She stated that she would only use the written statement to impeach the petitioner's direct examination testimony.  The trial court allowed use of the statement for that purpose and denied the petitioner's motion for mistrial.

The prosecution proceeded to cross-examine the petitioner regarding prior inconsistent statements he made about the cause of an argument he had with the victim; that he did not pay attention to the answering machine message from the police; and he may have had his hand near the

-6-

victim's rectum.  The prosecutor did not mention that the statements were made to the police.  The petitioner generally denied making these statements or said that he did not recall saying them.  The prosecutor then called Officer Steele as a rebuttal witness.

The last state court to address the petitioner's claim regarding the written statement, the Michigan Court of Appeals, held that the trial court did not err in its handling of the discovery violation.  The State court held:

> A defendant is entitled to have produced at trial all the evidence bearing on his guilt or innocence that is within the prosecutor's control. . . . While earlier case law suggests that prosecutorial noncompliance with a discovery order would result in reversal unless the failure to divulge was harmless beyond a reasonable doubt, see *People v. Pace*, 102 Mich. App. 522, 530-31; 302 N.W.2d 216 (1980), more recent case law is consistent with MCR 6.201 and holds that questions of noncompliance with discovery orders or agreements are subject to the discretion of the trial court. *People v. Taylor*, 159 Mich. App. 468, 487-88; 406 N.W.2d 859 (1987).  The court must exercise discretion in fashioning a remedy for noncompliance. *Id.* at 487.  To fashion a remedy, the court must determine the legitimate interests of the court and the parties involved and how they may be affected by the remedial choices available. *Id.*  This process requires an inquiry into all the relevant circumstances, including the causes of the tardy or total noncompliance, as well as a showing by the objecting party of actual prejudice. *Davie*, *supra* at 598.
>
> The use of a defendant's nondisclosed statements for impeachment purposes is permissible and generally is considered not prejudicial because a defendant is presumed to know of them.  Thus, in *People v. Lynn*, 91 Mich. App. 117, 126-27; 283 N.W.2d 664 (1979), where the defendant was impeached with a prior statement that had not been made available to him pursuant to a discovery order, this Court found no prejudicial error because the statement was made by the defendant, and the defendant was presumed to know what statements he had made.  Similarly, in *Taylor*, *supra* at 487-88, this Court held that the defendant was properly impeached with a letter he wrote, despite the prosecution's nondisclosure of the letter, because the defendant had knowledge of the letter independent of discovery.
>
> In this case, defendant clearly had knowledge of his own statement to the police officer independent of discovery, and therefore he was not in a position to claim prejudice from its use for impeachment purposes.  Moreover, even ignoring the impact of the admission of the statement, the evidence against defendant was overwhelming.  Under these circumstances, the trial court did not abuse its discretion

-7-

in denying defendant's motion for a mistrial and allowing the statement at issue to
be used for impeachment purposes.

*People v. Gansz*, No. 216174, 2000 WL 33395247, at *1 (Mich. Ct. App. Dec. 12, 2000)
(unpublished).

In his petition, the petitioner argues that the prosecution violated a state discovery rule and deprived the petitioner of a fair trial because his attorney would have advised him not to testify had he known of the existence of the statement. It is well-established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Furthermore, "there is no general constitutional right to discovery in a criminal case." *Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002) (quoting *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988)); *see also Spirko v. Mitchell*, 368 F.3d 603, 610 (6th Cir. 2004), *cert. denied*, 125 S. Ct. 1699 (2005). "[A]ll the Constitution requires, per the due process clause, is that the defendant not be deprived of a fundamentally fair trial." *Id.*, citing *Presser*, 844 F.2d at 1281.

The petitioner's argument that he was denied a fair trial is without merit because he presumably knew of the statements he himself made to the police and could have shared that information with defense counsel. *Cf. Hicks v. Collins*, 384 F.3d 204, 220-21 (6th Cir. 2004) (finding no violation of the due process right enunciated in *Brady v. Maryland*, 373 U.S. 83 (1963), where inculpatory statements the petitioner made to police were not disclosed prior to trial). Furthermore, the petitioner has not shown that he was prejudiced by the late disclosure of this prior statement. While a few aspects of the police statement were somewhat inconsistent with the petitioner's testimony, the statement was hardly damning evidence and the petitioner testified that the statement was inaccurate. The petitioner also was impeached by statements he wrote in a

-8-

number of letters to the victim, explaining that he lost his temper during the incident.  The petitioner has not established that allowing admission of the statement for impeachment purposes deprived him of his right to a fair trial.  The state court's conclusion that no reversible error resulted from the impeachment did not contravene or unreasonably apply federal law.

B.

The petitioner next claims that he is entitled to habeas corpus relief because the evidence was insufficient to sustain his convictions for kidnapping and one count of first-degree criminal sexual conduct (vaginal intercourse).  "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship,* 397 U.S. 358, 364 (1970).  The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).

> [T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 318-19 (internal citation and footnote omitted).  This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Id*. at 324 n.16.

The state court of appeals conducted a thorough analysis of the evidence in the record and concluded that there was sufficient proof of guilt of each of the elements of kidnapping and first-degree criminal sexual conduct.  The court stated:

-9-

[D]efendant argues that there was insufficient evidence to support his convictions. This Court reviews claims of the sufficiency of the evidence de novo. . . . In evaluating whether the evidence introduced against a defendant supported a conviction, this Court views the evidence in the light most favorable to the prosecutor and determines whether a rational trier of fact could have found that the essential elements of the crime charged were proven beyond a reasonable doubt. *People v. Johnson*, 460 Mich. 720, 722-23; 597 N.W.2d 73 (1999).

The kidnapping conviction in the instant case was based on secret confinement. *See People v. Jaffray*, 445 Mich. 287, 297, 305-07; 519 N.W.2d 108 (1994). Defendant contends that no secret confinement occurred in this case because the victim was not restrained and was free to leave. We disagree.

Secret confinement occurs when the victim is unable to avail herself of the opportunity for outside help. *Id* at 307. The essence of secret confinement as contemplated by the kidnapping statute is deprivation of the assistance of others by the [sic] virtue of the victim's inability to communicate her predicament. *Id.* at 305-09. To determine whether secret confinement occurred, the totality of the circumstances must be examined to determine whether the victim was deprived of the assistance of others. *Id.* at 309.

When looking at the totality of the circumstances in this case, a rational trier of fact clearly could have found, beyond a reasonable doubt, that secret confinement occurred. Deputy Thomas Buckley stated that when the police approached defendant's house, he could see a man and woman physically fighting and heard the man telling the woman to "shut up." The woman was trying to get away but the man held her and covered her mouth. The victim stated that when she realized the police were outside the house, she tried to bang on the window but could not do so because defendant was holding her back. She stated that defendant told her to be quiet and not to move and not to answer the door. The victim further testified that she was not free to leave the house or to make telephone calls during a three-day period. She testified that defendant hid the upstairs telephone so that she could not use it and that defendant would not allow her to answer or return calls from her ex-husband or the police. According to the victim, defendant was with her the whole three days except when he left to return a videotape; she did not leave the house then because the video store was very close and she had nowhere to go, and she explained that she did not call the police because she feared that defendant might return home and harm her before they responded to her telephone call. The victim further testified that defendant beat her up severely and sexually assaulted her during the three days.

Viewing this evidence in the light most favorable to the prosecutor, a rational trier of fact could have concluded, beyond a reasonable doubt, that the victim in this case was (contrary to defendant's argument) not free to leave, was unable to effectively communicate her predicament to others, and was therefore kidnapped. [Footnote 1:

-10-

Defendant additionally contends that a kidnapping conviction may not be based on a victim's confinement in her own house. This contention is without merit. *See Jaffray, supra* at 312 n.37.]

With regard to the CSC I conviction involving penile-vaginal intercourse, defendant contends that there was insufficient evidence to support the conviction because the victim consented to having intercourse. However, when viewing the evidence as a whole in the light most favorable to the prosecution, it is clear that the prosecutor presented sufficient evidence from which a rational trier of fact could have concluded, beyond a reasonable doubt, that the victim did not in fact consent to having sexual intercourse with defendant. The victim stated that in addition to causing her other physical injuries, defendant split her head open by throwing her against the headboard of a bed at some point before they had sexual intercourse. She stated that she told defendant "no" more than once but that defendant penetrated her anyway. She further stated that she did not consent to having sex with defendant but that, based on past experience, she knew he would have sex with her whether she wanted to or not. She explained that she did not fight against defendant because when she had tried to fight him off in the past, she had been unsuccessful. This evidence indicated that the victim was in fear and unable to stave off defendant. A rational trier of fact could have concluded, beyond a reasonable doubt, that the victim did not consent to having sexual relations with defendant.

*People v. Gansz*, 2000 WL 33395247, at *2-3.

The Court finds this well-reasoned disposition of the petitioner's claims was neither contrary to nor or an unreasonable application of clearly established federal law. The court of appeals cited case law that plainly incorporated the *Jackson* standard, and explained and supported its conclusion that a rational trier of fact could have found the petitioner guilty beyond a reasonable doubt of kidnapping and first-degree criminal sexual conduct. Therefore, no relief will be granted on this claim.

## C.

Finally, the petitioner contends that he is entitled to a writ of habeas corpus because his attorney was ineffective in failing to adequately investigate and prepare for the testimony of an expert witness in "Battered Woman Syndrome." On the day that the expert was scheduled to testify,

-11-

defense counsel explained to the court that he was unprepared for this expert opinion testimony because the prosecution had failed to inform him that the witness would testify as an expert. The prosecution noted that the witness was listed on the prosecution's witness list and that the prosecution was not required to designate her as an expert on the witness list. The trial court observed that there is no requirement in criminal cases in Michigan to designate expert witnesses and provide their qualifications prior to trial. In her testimony, the witness, Hedy Nuriel, explained that it was not unusual for women in abusive relationships to stay even when their abuser is away or asleep and they might have an opportunity to escape. She also noted that it is not unusual for battered women to lie to protect their abusers.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to

-12-

undermine confidence in the outcome." *Id*. at 694.  Unless the petitioner demonstrates both deficient

performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in

the adversary process that renders the result unreliable."  *Strickland*, 466 U.S. at 687.  The Sixth

Circuit, applying the *Strickland* standard, has held that a reviewing court must focus on whether

counsel's alleged errors "have undermined the reliability of and confidence in the result."  *McQueen*

*v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996).

The opinion of the Michigan Court of Appeals regarding the petitioner's ineffective

assistance of counsel claim stated:

> [D]efendant argues that he was denied the effective assistance of counsel because his
> trial attorney failed to determine before trial that witness Hedy Nuriel was an expert
> on battered women's syndrome and therefore failed to adequately prepare for
> Nuriel's testimony or to secure a corresponding expert on defendant's behalf.
>
> This Court presumes the effective assistance of counsel, and a defendant's burden
> to prove otherwise is a heavy one. . . . To determine whether ineffective assistance
> of counsel occurred, this Court must determine (1) whether counsel's performance
> was objectively unreasonable, and (2) whether the defendant was prejudiced by
> counsel's defective performance.  *People v. Pickens*, 446 Mich. 298, 302-03; 521
> N.W.2d 797 (1994) . . . .  To convince this Court of prejudice, a defendant must
> establish "a reasonable probability that, but for counsel's errors, the result [of the
> proceedings] would have been different."  *People v. Hoag*, 460 Mich. 1, 6; 594
> N.W.2d 57 (1999), quoting *People v. Johnson*, 451 Mich. 115, 124; 545 N.W.2d 637
> (1996). . . .
>
> Even assuming that counsel's performance was deficient in the instant case,
> defendant has failed to demonstrate prejudice.  First, defendant's attorney cross-
> examined Nuriel regarding whether different people in the same circumstance react
> to a situation differently and asked if Nuriel thought that people have free will.
> Second, as noted by the prosecution, Nuriel's testimony concerned the behavior of
> battered women in general; her testimony was not specifically about defendant's
> conduct.  Third, the judge gave a limiting instruction regarding the testimony.
> Fourth, defendant has presented (1) no affidavit or other documentation indicating
> that his attorney could have obtained an expert defense witness to counter Nuriel's
> testimony, and (2) no argument indicating how a better-prepared defense attorney
> would have more effectively cross-examined Nuriel.  Finally, the evidence of
> defendant's guilt was strong, even in the absence of Nuriel's testimony.  Under these

-13-

circumstances, defendant has not met his burden of showing that his trial attorney's representation prejudiced him, and he is therefore not entitled to a new trial.

*People v. Gansz*, 2000 WL 33395247, at *3-4.

A court need not conduct an analysis under the competence prong of the *Strickland* test if the petitioner fails to show prejudice. *Baze v. Parker*, 371 F.3d 310, 321 (2004), *cert. denied*, 125 S. Ct. 1670 (2005). The petitioner has failed to show that he was prejudiced by counsel's allegedly deficient performance. The Court's review of defense counsel's cross-examination of Ms. Nuriel discloses that he questioned the witness regarding the limitations of her testimony and her inability to speak specifically to Ms. Mannix's conduct in this case. The petitioner fails to identify any questions defense counsel should have asked but failed to ask of Ms. Nuriel. He fails to suggest an alternative approach to cross-examining Ms. Nuriel that counsel should have pursued. In addition, as stated by the court of appeals, the petitioner has failed to show that any expert witness could have been presented who would have given testimony favorable to the petitioner.

In addition, other evidence was presented at trial that would have explained the behavior of the victim in this case. For example, the victim testified that she did not leave the house even when the petitioner left to return a video because the video store was less than a five-minute walk away and he could have caught her before she could get very far. She testified that she was afraid to call the police when he was gone because she feared that he would get back and find out about it before they could respond. The victim also testified that she wrote an inconsistent statement at the petitioner's request recanting statements she made to the police and health care providers soon after the incident. She testified that she thought the letter would keep him out of jail and she wrote it because she thought that she was in love with him. Thus, the Court concludes that the state court's

-14-

finding that the petitioner failed to establish he was prejudiced by his attorney's performance was neither contrary to nor an unreasonable application of Supreme Court precedent.

III.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: March 2, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 2, 2006.

s/Tracy A. Jacobs
TRACY A. JACOBS

---